3-13-06-72 People of the State of Illinois Appellee by Lauren DeMichael This is Travis Cannon, Pallant by Ted Hamel Mr. Hamel May I present the court? Good afternoon, Justices. The first point I want to make out is to the motion to suppress. In reading the statute when I was driving down here, part of the statute says whether or not consuming alcohol under the direct supervision of a parent or parents who is under the age of 21 in the privacy of a home. And that's what really got to me when I was driving up in the privacy of one's home. So as a motion to suppress, early morning hours they get a call of loud noise. Please come to the residence. Instead of going to the front door, which I believe they should have, they went to the rear. Obviously they heard something, they went to the rear of the residence. Everybody went in. At the rear residence, of course they see somebody inside, and they were told by my client, Mr. Cannon, to leave. The words of Git are warned, and I don't want to misquote the transcript. Some in substance, they went to the front. In my opinion, if they went to the back of the residence, and they thought they should have gone to the back of the residence, then they should have stayed at the back of the residence to do their work or whatever they wanted to do next. But they didn't, they went to the front. Now granted, there was a conversation that said, well I'm not speaking to you until you get to the front of the residence, but nonetheless they were already told to leave. They already came back to the rear of the residence. So my opinion with the cases that we cited in our brief, they should have gone to the front door first. They should have knocked on the front door first. Why? Because it's a private residence, as the statute said, in the privacy of your home. There's no escape if there's some criminality. Nobody's going anywhere. There's no exigent circumstances. There's no emergency. There's no indication of weapons. There's nothing like that. There's nothing that would say that there is a threat of danger or immediate danger. One can retreat to one's home. And you could say with everybody bustling into a house, that would be a retreat to one's home. So in my opinion, the warrantless entry into the curtilage of the area of the home, especially the back, doesn't satisfy due process in the sense that my client's motion to suppress should have been granted. Again, as I said, why the back door, not the front door? Why not leave when they were asked to leave, even though questions went on to say, I'll talk to you at the front. We're talking about the Fourth Amendment here, why not due process? Excuse me, but I said that, but I misterned. But my point is, if they thought they actually had a reason to stay, a reason to be on the premise, then they could have just completed their activity if they were on solid ground, no pun intended. They could have stayed there at the rear of the house. They didn't do that. What I think they should have done, in my opinion, is they felt that going to the front of the house and knocking was not satisfying to them as to completing their duty. They could have called the state's attorney's office. They could have woken a judge up. They could have asked for an entry of a warrant if they thought that some emergency existed. But they did not do that, so in my opinion, they didn't ask for a warrant. I don't think this rises to the level where a warrantless entry is justified in this case. And especially because with the case we cited, that walking around the invasion of the curtilage of the home, to me, is part of the house as the case itself. The next issue I want to point out is the trial itself. We went to trial. We believe we had an affirmative defense. The affirmative defense being that under the control of a parent. When the police officers got there, what did they see? They went to the back of the house. They saw a bunch of people going inside the house. And when the door of the back of the house was shut, they saw an authority figure later determined to be my client's mother. So you see a mother at the back of the house and immediately get there. And then when you go to the front of the house, you see the mother at the front of the house with my client's son there. How much evidence do you need to say whether or not it's under the direct supervision and control? I'm not going to... The officers testified that they smelled alcohol. Officers testified they smelled alcohol on my client. Officers still testified that they saw my client's mother at the back and saw my client's mother at the front. But when I asked Officer Bird, and Officer Bird was probably the one who gave the more forthcoming evidence, because the other two officers were there to corroborate whether or not alcohol was being consumed. What she did say, what I found kind of remarkable, when she walked to the rear of the residence, she didn't see anyone actually consuming alcohol. Now again, in the beginning of the questions with the state, she said yes, she saw them in the backyard consuming alcohol. When I asked her, she didn't see anyone actually consuming alcohol, but there were bottles on the table. She saw Mrs. Cannon looking outside the back door. She didn't know where Mrs. Cannon was. Rightfully so, five minutes before, and couldn't tell if she was on the deck before she got there. So the question becomes, and could not tell the ages of the other individuals there. So did I raise enough to say whether or not it was under the direct supervision? We're just talking about Travis, my client here. Under the direct supervision of a parent. My opinion, we raised that issue. We presented it. We did not have to present in our own case in chief. We presented it with the state's witness being the officer. Again, Travis told the officer to leave. They didn't do it. But the officer doesn't have any knowledge of when Travis drank in the trial. That's how the evidence came out. And Officer Byrd never really went into detail with my client as to where, when, how much, and why. Now granted, there was a point to which the line of questioning ceased, but when you're presenting something at trial, whether or not the evidence that they presented is beyond a reasonable doubt is what they're here to decide. And in my opinion, they didn't present enough. They called three witnesses. They called Officer Byrd and two other officers. They chose, they elected, not to call anyone else. That was their decision. Officer Byrd always said she couldn't ID the persons at the table, could not tell if Travis was sitting at the table, and I'm talking about the table outside on the deck for purposes of the time frame. And she didn't know what was going on five minutes before. So with that in mind, with the mother there, and not knowing where the mother was, mother at the front door, mother at the rear door, to say direct supervision requires that you sit there, and I'll use a better term, handcuffed to them, that you cannot leave their presence. If you have to go to the other room, grab a phone, go to the bathroom, somehow that has to stop. It's not beyond, when they say direct supervision, I don't think they mean that in a sense that you have to sit there and monitor and hover right on top of them. Direct supervision can be a lot of things because you are at, in, as I said in the statute, in the privacy of your home. So with that in mind, I think we, one, proved up the affirmative defense that this was, in the privacy of one's home, under the direct supervision of the parent who was there. And I don't think there's any doubting of the facts that one, Mrs. Cannon was home and Travis was her son. In my opinion, I don't have to go in this type of case and prove the defense beyond a reasonable doubt. I don't have to prove my client innocent. But what the state presented and the evidence they presented with their witness, I believe I was justified in saying that we had a defense. The defense was an affirmative defense. I believe that the court initially stated that we'd have to prove it by a preponderance of the evidence. I think there was, in my opinion, it's any slight evidence of the cases we cited before the court in our brief that tends to show that this defense is there as long as we prove it up with the state's evidence or ours. But we did do that. If there was some type of exigent circumstance, if there was some type of emergency, if they called other witnesses to this event to disprove my theory of the case, of the evidence that was presented at trial, maybe the court would hopefully look at this differently. But what was presented, in my opinion, was one, not enough to sustain guilt beyond a reasonable doubt. Because you still don't know, yeah, an order of alcoholic beverage on his breath, and there's no doubt I could take comfort in the fact that the officers were not willing to have a great debate with a young male on the front of the porch in the wee hours of the morning. I appreciate that fact that they didn't want to go through that, but nonetheless, they really didn't get to the point of what was consumed, when was consumed, how many ounces were consumed, where were you when it was consumed, and where was your mother? That part we don't have, and that's why I'm saying we proved up an affirmative defense, and we at least proved up doubt in the sense that in the privacy of one's home with the parent, at least we showed that in our case in chief, and I respectfully request the court to reverse the trial court's decision as to the motion and as to the decision beyond a reasonable doubt. With respect to your affirmative defense, do you agree that you have any burden at all? I agree that I have to present some evidence, and from the cases that I cited in our brief, and I read them again today, you have to show some evidence. I don't think it's a preponderance of evidence. Without putting your client on the stand, you could have put his mother on the stand and said, hey, I watched Junior, and he sat there and had two beers in front of him, and then left him. Justice, so could the state. The state chose not to. But that goes to whose burden it is on that issue. True, but I think when you say burden, it refers to me, burden beyond a reasonable doubt, and I'm saying burden is just a slight evidence, and the evidence can come from the state's witnesses, and the state's evidence was she's there. What more do I need to say that she's there at the house, at their home, and the officer can't tell me where she was five minutes before, she can't tell me if she's on the deck, because the evidence is not, at least I presented enough evidence, I think, to make a prima facie case. Because this would, in my opinion, this has other ramifications, depending on justice. If you have loud noise in a residential area, can the officers walk in the backyard of the house? And then to the motion to suppress, that would mean to change courses. But as to a defense case, as to shifting the burden, having the burden of proof, having the affirmative defense of a parent there, clearly the parent's there. Clearly the parent is right there on the deck when the officers come to the back door. But that's not when the kid was drinking. But they, again, but they haven't presented evidence when the child was drinking, and to be, and splitting legal hair, they really haven't presented evidence as to what he was drinking. Well, they presented evidence that whatever he was drinking had alcohol in it. I'm not, I'm not going to, and again, I would be. It doesn't make any difference whether it was Budweiser, Old Milwaukee, or Jack Daniels. Correct, correct. My point was more over the fence that when it was consumed, all right, and if it was consumed, and the, you know, are they saying it's five minutes before, or was it ten, or was it two hours before, and if you have the mother there, we're speculating on one, time of consumption, two, the amount of consumption, and let's just assume for the fact that it's alcohol. We don't know when or where. They say all they presented is one, he smelled of alcohol, and two, the mother was home. So worst case scenario, the mother's home when he's drinking. Because to say it otherwise would say it's fact, not an evidence. So they presented evidence that the mother was home, mother was there, mother was on the deck, mother went to the front door. So with that in mind, you're saying the mother's there. Now, how do you clearly define direct supervision? But at least I raised the evidence to say that direct supervision has to be proven that it wasn't beyond a reasonable doubt. I presented some evidence to say direct supervision was there from the evidence that they presented, well, with their witnesses. So I think as to that, Herb, I thought I, respectfully, I thought I hit that mark. But obviously the court doesn't see that there's nothing I can do on that. Well, thank you very much. Thank you. Thank you. Ms. Dreifel. May it please the court? Counsel. Laura Dreifel on behalf of the people. First regarding the motion to suppress issue, the officer's actions were reasonable. There was a call. It was a call from the next-door neighbor. It was a call of an underage drinking party and of loud noise. So the officers respond to the call. They get out of the car. They listen to see what they can hear. They hear loud noise. It's coming from the back. Under the Woodrome case, if there's a legitimate reason to approach the back door, officers can approach the back door. And here they want to talk to the residents, and the residents are at the back door. That's a legitimate reason. And then when no one answered, everyone goes inside. So once everyone goes inside, there's no one left to talk to. So she knocks on the back door. The mother doesn't answer. So at that point, she leaves and goes to the front door. But before she even gets to the front door, defendant runs out from the front, tells the officers, I'll talk with you, but only on the front porch. So they were then actually invited onto the front porch. Regarding the guilt beyond a reasonable doubt issue, the state doesn't need to prove when, where, or how much alcohol was consumed. They just need to prove that alcohol had been consumed. And they did that in this case. There's the observations both by the side of the house and then again at the front of the house. By the side of the house, one officer testified about her observations of bloodshot, glassy eyes, aggressive demeanor, also an odor of alcoholic beverage emanating from the breath. And at the front porch, two officers testified about the same factors, and also they had experience dealing with many observations of when to tell when someone's under the influence of alcohol. And the exemption for being under the direct supervision of a parent in the privacy of the home, it just wasn't raised under this evidence. The people submit it's an exemption, but whether it's an exemption or it's an affirmative defense, even if it's an affirmative defense, there has to be slight evidence of the defense before any burden shifts to the people. And in this case- Wait a second. Why do you state that it's the state's? That's not the state's burden? Well, if it's an affirmative defense, then the case law cited in the defendant's brief is that slight evidence is required to raise the affirmative defense issue. If it's an exemption, which it was found to be in Finkenbinder, then- That's the answer I would like you to give to me. Oh, okay. You're set on that question? No, no, no. I'm sorry. It's the exemption issue that I want you to speak to. Oh, whether it's an exemption or not?  or vice versa. Well, under the exemption case law, and Finkenbinder finds it's an exemption, Finkenbinder ultimately doesn't deal with whether it's preponderance or whether it's slight evidence. Under either of those, some evidence must be present for a defendant to raise it. But the people believe that because it's an exemption, the case law applies regarding exemptions is the preponderance case law, and I recognize that that was a weapons offense, but the weapons offense framework of how exemptions are raised by the preponderance also has been applied in a criminal sexual assault case regarding a different exemption, even where that wasn't written into the statute. And the language of that statute, I believe, is similar, where it says a medical exam does not fall under that statute. Doesn't the Beers case say that once the exemption is made a reasonable possibility? The Beers case, I think, was actually an affirmative defense case. It says here that the applicability of the exemption is made a reasonable possibility by the evidence or otherwise a trial either by the state or the defendant. The state must meet its usual burden of proof as to that issue together with all the other elements. So are you saying that it's not a reasonable possibility that this kid and his mom is home, the allegations made by the officer, and it's obvious that the mother is telling him to go inside, that she's had no idea, hasn't allowed him or is... The defendant himself actually said that his mom was in bed before the officers arrived. Didn't the officer testify that they saw mom at the back door after the kids were coming in? So the kids were on the back porch, and as defense counsels argued today, that doesn't say anything as to when the actual consumption occurred. It's the consumption that must be directly supervised. And the group of people was outside on the porch. Mom was first seen after the kids were shuffled inside. She wasn't outside on the porch. Do you think that's required? Well, certainly something more than mere presence in the house is required under Finkenbinder. In Finkenbinder, the evidence had been that the mother was home and actually that she allowed her son, I believe it was, to drink at the party. She observed him drink two beers, but she wasn't directly observing him the whole time, which was proven by the fact that she didn't know that he had also consumed shots of liquor. So... Here, you didn't put on any evidence that mom didn't... I mean, obviously your witness says that it was apparent to her that he had been consuming alcohol to the police officer. If he was consuming it on the deck, she still wasn't even seen on the deck. The defendant himself said that she was upstairs in bed. So by his own evidence... But he didn't testify. She wasn't there. He didn't testify. You're presenting the evidence. You have the burden of proof. And your officer says, Mom is at the back door. Isn't it a reasonable possibility that she smelled the same alcohol that she had allowed this? I mean, we're talking about your burden is beyond a reasonable doubt. And there's an exemption. It seems that it's mom, privacy of the home. I mean, I don't know how much direct supervision a 19-year-old needs, whether that's a term of art or what that is. But it seems like you had maybe some more proof to put on it. Well, for direct supervision under the statute, as in Finkenbeiner, she has to know what he drank at the bare minimum. And there's absolutely no evidence that she was present at the same time the alcohol was consumed. There's no evidence she has any idea what he drank. He could have been drinking before he got home, been drinking more on the porch. Maybe she was. But where is it to show that under the exemption? Under the exemption? Isn't that reasonable that the state that has that burden would have to show some of that by remedy? Was she wearing a PJs? Well, if there had been evidence that she had been supervising him directly while, or even supervising at all, all there was was that she happens to be inside after alcohol had been consumed and the officers show up and are outside. So that doesn't show that she was directly supervising it when it happened. Because as he says, it doesn't show when it happened. So if we don't know when it happened, just the fact that she happened to be inside while they're outside doesn't show that she knows exactly. But I think the point that he was trying to get to is that you have no evidence that he consumed any alcohol on that day at all. And our point is that he's got to raise it first. And it doesn't matter if he consumed it on the deck or not. What matters is that he consumed it. A requirement of where it is isn't required for the 20. But that would lead us back to the issue of the motion to suppress. If you're saying, well, it doesn't matter if it happened in the home, because you're saying that they had a, you know, these people were all outside. This is where the noise and the alcohol was consumed was outside. So there was no expectation of privacy. You know, the motion to suppress and then the defense, you know, that that should have been, you know, that shouldn't have been granted. But if you say, well, it doesn't matter if he drank it inside. I think then you have a problem with how does the officer know that he drank it inside. I mean, you know, I think you have. All the officer needs to know is that he drank it. And when defendant himself says his mother is in bed and she says, well, at least at the motion to suppress hearing, she said no one drank outside and no one drank inside. So at the motion to suppress she did. There was evidence that she had told them that she didn't know anything about people drinking outside and people didn't drink inside either. So under defendant's own statements, she wasn't there for the consumption. And who's got the burden of proof on the exemption? After defendant raises it, the language in Smith says the people need not negate it. But at the same time, they still have the burden of proof on every element. The element of the crime itself. But the exemption, the state. Under Smith exemptions, the state need not negate an exemption. Under the Smith case, the Smith case states that the people need not negate an exemption. Initially, right? But once the exemption is raised, it becomes a reasonable possibility. I believe under the Smith case dealing with exemptions, I think the language was that the state need not negate them even if they are raised. Although the burden of proof is ultimately on the people. Yeah, the Smith case is ultimately kind of confusing. Who's got that burden and when it kicks in? And the people submit that just being home when the fence comes to light isn't good enough to raise it. And even if the people had to prove it under the evidence that was presented combined with the Collins standard, if the trial judge believed the defendant that his mom was upstairs sleeping, then that shows no direct consumption anyway. I mean, no direct supervision of consumption in any case. Is that included in the briefs of the mother's case? I think that was in the defense counsel's brief. I don't think that was in the record I saw, so I couldn't speak to the facts of that case. All right. If there are no further questions, the people would ask them. I guess not. Thank you. Thank you, Ms. Michael. Ms. Hamlin, you're up. In relation to the questions that were asked, one thing I did put in my brief was questions that I did ask Officer Byrd. She could not tell us whether or not the mother was supervising on the deck, correct? Well, of course she couldn't. How could she? She wasn't there when the drinking was going on. Let me ask you this. What do you think about Finkelbinder? Was it correctly decided? Let me get that in a roundabout. I'm trying to remember. No, you can't. Okay. I'm trying to get that fact straight because the one last question was you can't tell us all the people, the ages of all the people on that deck who else was there. Correct. So she doesn't know who was actually on the deck. She didn't see anybody drinking on the deck. This is about her son. So all those other people are irrelevant to our analysis here. Correct. But when it goes to supervision, and I thought the direct quote out of the transcript was that he said she was in bed. We don't know where that is. I mean, I don't know where it is. I don't think it was ever presented to the court where exactly that is. Was it on the couch? Was it in watching TV? Is it on the first floor? We don't know. Could she have the door open and see where she was? So anyway, what do you say about Finkelbinder? Judge, I'm trying to remember the facts of that case. Finkelbinder said you've got to show direct supervision. And then the direct supervision, yes. And I say the direct, I didn't mean to cut you off there. Your evidence shows that Mother was present at least after the drinking. There's evidence that Junior had been drinking, the testimony, and evidence that Mother was certainly up and about afterwards when the police showed up. Finkelbinder seems to say pretty clearly that you've got to show that the parent is supervising the alcohol consumption, not just that the parent was present after the drinking was over. Well, I think in the Finkelbinder case, they did have, as they quoted, how much was actually drinking. And I think you testified, too, she had two beers and then there was another shot. That evidence wasn't even brought up as to who, what, when, where, how, why, which I was trying to allude to the court. So the Finkelbinder was too strict in that motion. At least they had the facts to present to the court as to they didn't think it was direct supervision because they had plausible facts as they actually did an investigation or presented that evidence. Well, they can't make your client testify about how much he drank and where he drank and how much, but they can put on evidence that he had been drinking. But then I go back to the privacy issue because he was still at the house. And the thing about it, he left the house, he went somewhere else. He was found by a 7-Eleven walking down the middle of the street. And that goes to the other issue about whether the police could go to the backyard. Yes. Okay. But as far as on this other issue about the second, the exemption, what, by just, is it your position that just by saying you put on evidence the mom was there when the police showed up and after the drinking was over, that's all they got to put to prove the, to meet whatever burden you have on that exemption? Yes, actually if it was at the house. And he may have made more statements to the police in that case in order to raise the bar as to the affirmative defense. But in our case, as with all people, with children all, and we call them children or young adults, to say direct supervision, again, I'm going back, does that, think about it, would say you had better put a handcuff on him and you better be with him right in your house. Because I think they took that to an extreme because there's no way within reason that in your home you're not going to be in every room with your child at every moment of the day, no matter if they're downstairs playing a video or they're upstairs doing it on the TV. So they're saying the statute says that if the kid's going to be drinking alcohol, you better be. If they're playing a video game, video away. But Finkelbinder seems to say that if they're going to be drinking alcohol, if you want that attention, they better be doing it with the supervisor. Not just here's a case of beer, I'm going to bet. But in both those cases, which makes a difference, away from the residence, and I would say that the defendant was still under the direct supervision of the parent. Because if she's still there and she's still at the house, who's to say that she's not under the direct supervision of the parent at that moment? Now remember at the 7-11, he's still not and he gave testimony basically with his statements and it equates that he wasn't. Here we don't have that as a distinction to Finkelbinder. I think they took it to the extreme as direct supervision, almost a lockdown mentality in their case. I don't think as a parent has to be held to that high standard. I agree with the risk of alcohol. Things can happen. But when you're in your home, and that's what I alluded to in the beginning, the privacy of your home, I think the bar raises it. Well, undoubtedly if they hadn't disturbed the neighbors, the police wouldn't have shown up. That's why I'm here today. Thank you. Thank you. Thank you both for your arguments today. We'll take this matter under advisement. In fact, there's a written disposition over there. Now I guess we'll recess until the morning. Thank you.